NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | Crim. Action No. 09-0521 (GEB) |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| RAYMOND HORNE, | ) | |
| Defendant. | ) | |

**BROWN, Chief Judge**

This matter comes before the Court on the pretrial motion of the defendant Raymond Horne ("Defendant") to suppress evidence discovered during a "stop and frisk" of his person. (Docket Entry No. 9.) The issue before the Court concerns whether given the totality of the circumstances there was "reasonable and articulable suspicion" to "stop and frisk." For the reasons stated in this memorandum opinion, the Court will deny Defendant's motion.

**I.      BACKGROUND**

The United States has charged Defendant in an indictment filed on July 10, 2009, with being a felon in possession in violation of 18 U.S.C. § 922(g)(1). (Indictment) (Docket Entry No. 1.) It charges that on or about April 15, 2009, Defendant, who had previously "been convicted of a crime punishable by imprisonment for a term exceeding one year in a court in the State of New Jersey" was found to be in possession of a firearm. (Id.)

1

A suppression hearing was held on August 28, 2009.[1] The situation described during the hearing revealed that two Newark police officers, Detectives Pedro Torres and Alan Knight, were driving in a blue construction van in the high crime area of the Felix Fuld housing complex, otherwise known as "Little Bricks," in Newark, and were wearing plain clothes during the patrol. Detective Torres was driving and Detective Knight was seated in the front passenger seat. At approximately 11:30 P.M., while slowly driving south on Livingston Avenue, near the housing complex's parking lot between Rose and Muhammad Ali Avenues, the Detectives observed Defendant walking alone through the well-lit parking lot.

The versions of events provided by Detective Torres and Defendant at the hearing diverge at ths point. Detective Torres testified that as they slowed down in the van, Defendant also slowed down, stared at the van, and "put his hand on his [right] side." Detective Torres, in drawing upon his experience and training, believed that the gesture indicated that Defendant had a weapon and that he made the motion to intimidate the people in the blue van and communicate that they should stay away from him. Detective Torres testified that in his experience the most common place to conceal a weapon is on one's waistband. Defendant testified that he did not stare at the blue van and that he did not reach toward his right side to indicate that he had a gun. He testified that he keeps his keys on a chain on the right side of his belt and that he picked up his sweatshirt to access the keys on his belt to push the automatic "unlock" button on his key chain as he walked back to his car after escorting his step-brothers up to their apartment. However, Defendant admitted that in the right pocket of his zip-up sweatshirt or "hoodie" near the keys on his belt was his pistol.

---

[1] The Court provides this factual information solely for the purpose of this pretrial motion, and fully recognizes that Defendant is presumed innocent until proven guilty. The facts stated herein have not been proven beyond a reasonable doubt to a finder of fact.

As a result of the Detectives' observations, Detective Torres testified that they immediately stopped and exited the van, and announced "Police" as they approached Defendant with their guns drawn. Detective Torres testified that his partner, Detective Knight, conducted a Terry stop and frisk, which revealed a .25 caliber semi-automatic handgun hidden on Defendant's right front side. Upon finding the weapon, the Detectives arrested Defendant. However, Defendant asserted that he saw two people approach him with guns drawn and they did not identify themselves as police, and that as they approached him, Defendant put both his hands in the air. Defendant testified that the Detectives asked him some questions and searched the interior compartment of his car. When they did not find anything in his car, they positioned him on the hood of the car and frisked him, and at that point, Defendant maintains that they found a handgun in his right "hoodie" pocket. Thereafter, Defendant testified that the police officers searched his trunk, but they did not find anything.

From Detective Torres's perspective, based upon his experience and training, he believed that Defendant thought that the people in the van were there to rob him, and was demonstrating that he had a weapon and he was ready if they tried. Detective Torres testified that considering the time, location, Defendant's stare at the van, the pause as he walked, and the reach for his pants, Detective Torres was justified in his belief that Defendant had a weapon. Detective Torres denied searching Defendant's vehicle.

In addition to his own testimony, Defendant's step-mother, Adrian Hallenback, and step-sister, Ashanti Hallenback, testified on his behalf. Defendant's step-mother testified that Defendant went to the apartment to bring his step-brothers home from Penn Station. She stated that from her apartment window she has a clear view of the street, and she saw the blue construction van reverse down Livingston Avenue back to the parking lot. She saw two men exit the blue van. She believed

that the people in the blue van were "robbers." After she saw the blue van, she called to her daughter Ashanti and went to the bedroom where she stayed with other family members who were home.

Ashanti testified that she saw what happened from the kitchen window. She stated that she was watching to see Defendant get in his car and leave, and that instead, she saw the police officers drive in reverse and get out of the blue van. She stated that one officer approached Defendant and the other went toward Defendant's car. Ashanti testified that she could not hear what the police officer said, but she heard Defendant say to them that he was not from that neighborhood. She also saw one of the officers search Defendant's car, but he did not find anything. She maintained that she did not see a gun. Further, she acknowledged that Little Bricks is a high crime neighborhood.

## II.   DISCUSSION

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend IV. "[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000) (citing Terry v. Ohio, 392 U.S. 1, 9, 30 (1968) (holding that "what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures")). "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." Id. (citing United States v. Sokolow, 490 U.S. 1, 7 (1989)). The Supreme Court has elaborated that the stopping officer "must be able to articulate more than an 'inchoate and unparticularized suspicion

or 'hunch'' of criminal activity." Id. at 123-24 (citing Terry, 392 U.S. at 27).

"While an individual's presence in a high-crime area is not by itself sufficient to warrant a Terry stop . . . 'the fact that the stop occurred in a 'high crime area' [is] among the relevant contextual considerations in a Terry analysis." United States v. Valentine, 232 F.3d 350, 356 (3d Cir. 2000) (citing Wardlow, 528 U.S at 124). In addition, "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." Wardlow, 528 U.S. at 124 (citing United States v. Brignoni-Ponce, 422 U.S. 873, 885 (1975); Florida v. Rodriguez, 469 U.S. 1, 6 (1984)). In making such a determination, the Court must consider the totality of the circumstances, including the "location, a history of crime in the area, [the defendant's] nervous behavior and evasiveness, and [an officer's 'commonsense judgments and inferences about human behavior.'" Valentine, 232 F.3d at 353; United States v. Davis, 2009 U.S. App. LEXIS 11248, at *6 (3d Cir. May 27, 2009) (citing Johnson v. Campbell, 332 F.3d 199, 206 (3d Cir. 2003)). "Police officers may rely on their own experience and specialized training to draw inferences from, and make deductions about the cumulative information known to them that might well elude an untrained person." United States v. Holyfield, 282 Fed. Appx. 129, 131 (3d Cir. June 18, 2008). The Supreme Court has noted that "sometimes behavior giving rise to reasonable suspicion is entirely innocent," but it is an "accepted . . . risk that officers may stop innocent people." Wardlow, 528 U.S. at 130 n.4 (citing Terry, 392 U.S. at 30).

The Court will deny Defendant's motion, having concluded that the following facts warrant the Terry stop and support a finding of a reasonable and articulable suspicion. For the purpose of the Motion to Suppress, the Court found Officer Torres to be more credible than it found Defendant. First, every witness agreed that the Felix Fuld housing complex is a high crime neighborhood, and

Detective Torres, in his estimation, testified that it was one of the five most dangerous areas in Newark. Second, the Detectives saw Defendant walking alone at 11:30 P.M. across the parking lot of the housing complex. Third, the Court finds Detective Torres credible insofar as he testified that Defendant stared at the blue van that Detective Torres was in and that Defendant held onto his right side, as though he was indicating to the person or people in the van that he had a weapon. Detective Torres testified that in his experience and as a result of his training, Defendant's gesture was a sign of intimidation to communicate to those in the slow-moving blue van that they should stay away from him. Fourth, it is proper for the officers to rely on their experience to form the reasonable and articulable suspicion that Defendant was in possession of a weapon given his nervous or even intentional gesture to his right side.

In so concluding, the Court notes that Defendant admitted that he saw the blue van, that he reached toward his right side while walking through the parking lot at 11:30 P.M., and that the housing complex is a high crime area. While Defendant testified that he was merely reaching for his keys, and not holding his weapon as a sign of intimidation, Defendant's gesture, from the police officers' perspective, given the totality of the circumstances previously discussed, warranted the Terry stop. Indeed, "sometimes behavior giving rise to reasonable suspicion is entirely innocent." Wardlow, 528 U.S. at 130 n.4 (citing Terry, 392 U.S. at 30). Therefore, while the Court finds credible Detective Torres's testimony that Defendant held his right side as a sign of intimidation to any person in the blue van that may try to cause him harm, the Court holds that pursuant to either version of events, Defendant's motion must be denied.

The Court has considered the testimony of Defendant's witnesses, his step-mother, Adrian Hallenback, and step-sister, Ashanti Hallenback. The Court notes that the testimony of Defendant's

6

family members has added little relevant insight into the present inquiry. The Court does not find credible Ashanti Hallenback's testimony regarding the search of Defendant's vehicle. The Court also does not find relevant the majority of Defendant's family members' testimony. The issue here is whether Defendant's actions created a reasonable and articulable suspicion to execute the Terry stop. Defendant's family members reinforce that they also believe that the Little Bricks housing complex was a high-crime area, but they fail to add any other information that would cause this Court to grant Defendant's motion.

### III.   CONCLUSION

For the forgoing reasons, the Court denies Defendant's motion. An appropriate form of Order accompanies this Opinion.

Dated: September 1, 2009

s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.
